

**IT IS SO ORDERED.**
**Signed June 18, 2015**

*Arthur S. Weissbrodt*
**Arthur S. Weissbrodt**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-54680-ASW |
| RAKESH SHARMA, | Chapter 7 |
| Debtor. | |
| SHAHGIR S. GILL, | Adv. Pro. No. 11-05243-ASW |
| Plaintiff, | |
| v. | Hrg. Date: April 24, 2015 |
| RAKESH SHARMA, | Hrg. Time: 3:30 p.m. |
| Defendant. | |

**MEMORANDUM DECISION RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are cross-motions for summary judgment filed by Plaintiff Shahgir Gill, who is represented by attorney Jennifer L. Williams; and by Defendant Rakesh Sharma, who is represented by attorney Rattan Dhaliwal. Plaintiff seeks summary judgment on his nondischargeability claims under §§ 523(a)(2)(A) and (a)(6). Defendant seeks dismissal of those claims. For the reasons explained below, both motions are granted in part and denied in part.

## I. FACTS

The facts are not in dispute.[1] Plaintiff is a general contractor in the business of buying vacant lots, building homes on them, and then selling them for a profit. In 2003, Plaintiff's cousin-in-law, Satnam Singh Gill, approached Plaintiff about getting into the business. Satnam[2] discussed the idea with his close friend, Dinesh Sharma, and Satnam and Dinesh decided to become partners in the business.

Satnam and Dinesh purchased two vacant lots in Manteca, California in 2003 (with financial help from Plaintiff). Satnam and Dinesh agreed to pay Plaintiff for building custom homes on the lots at $75 per square foot plus a third of the profits from selling the homes. Construction on the first home was completed in May 2004. However, Plaintiff walked off the job on the second home in June 2004 after Satnam and Dinesh refused to pay Plaintiff for his work. At the time Plaintiff walked off the job, the second home was substantially complete with only minor finishes (such as carpet and light fixtures) remaining.

On June 8, 2004, Plaintiff recorded a mechanic's lien against the properties. After unsuccessfully trying to informally resolve his differences with Satnam and Dinesh, Plaintiff hired a lawyer

---

[1] Counsel for the parties have stipulated to the authenticity and admissibility of the documents and testimony they intend to use in support of the cross-motions to obviate the need to authenticate the documents and testimony, and to avoid objections to the admissibility of the documents and testimony.

[2] Because several of the individuals involved in this lawsuit have the same surname, this Tentative Decision refers to persons, other than the parties to this adversary proceeding, by their given names.

and filed a lawsuit in San Joaquin County Superior Court (Case No. CV024661) on September 3, 2004. The lawsuit sought to foreclose the mechanic's lien and recover damages for breach of contract.

Ten months after the San Joaquin County lawsuit was filed, Satnam and Dinesh filed a lawsuit against Plaintiff in Santa Clara County (Case No. 1-04-CV-030658). Satnam and Dinesh served the summons and complaint in that action by publication. After Plaintiff, who had no notice of the publication, failed to appear, Satnam and Dinesh took Plaintiff's default and obtained an order releasing the mechanic's liens.

The order releasing the mechanic's liens was entered on July 12, 2005. Less than a week later, Satnam and Dinesh sold the first home to Dinesh's brother, Rakesh Sharma (Defendant) for $500,000, and the second one to Kulwant Kang, another one of Satnam's close friends, for $511,000. Escrows closed on the sales in less than two weeks, without any inspections, appraisals, or any other usual escrow conditions.

Less than nine months later, unbeknownst to Plaintiff, Defendant sold the first home for $700,000, and Kulwant sold the second home for $510,000. Both homes were sold to bona fide purchasers. Plaintiff did not learn of the sales until after they had closed.

Plaintiff thereafter obtained relief from the default against him in the Santa Clara action and had the order releasing the mechanic's liens vacated. Plaintiff had the case transferred to San Joaquin County to be consolidated with his lawsuit. Plaintiff also amended his complaint to include claims for fraudulent conveyance

under California Civil Code § 3439.04 against Defendant and Kulwant Kang. The case went to trial on October 25, 2010.

The jury instructions with respect to Defendant pertain to the conspiracy count of the state court complaint. Those instructions reference Judicial Council of California Civil Jury Instruction ("CACI") 3600 and provide:

> SHAHGIR GILL claims that he was harmed by SATNAM SINGH GILL and DINESH SHARMA's sale of the homes and that RAKESH SHARMA and KULWANT KANG are responsible for the harm because they were part of a conspiracy to commit a fraudulent conveyance. A conspiracy is an agreement by two or more persons to commit a wrongful act. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.
>
> If you find that SATNAM SINGH GILL and DINESH SHARMA committed a fraudulent conveyance that harmed SHAHGIR GILL, then you must determine whether RAKESH SHARMA and KULWANT KANG are also responsible for the harm. RAKESH SHARMA and KULWANT KANG are responsible if SHAHGIR GILL proves both of the following:
>
> 1. That RAKESH SHARMA and KULWANT KANG were aware that SATNAM SINGH GILL and DINESH SHARMA planned to commit a fraudulent conveyance; and
>
> 2. That RAKESH SHARMA and KULWANT KANG agreed with SATNAM SINGH GILL and DINESH SHARMA and intended that the fraudulent conveyance be committed.
>
> Mere knowledge of a wrongful act without cooperation or an agreement to cooperate is insufficient to make RAKESH SHARMA and KULWANT KANG responsible for the harm.
>
> A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged coconspirators. SHAHGIR GILL is not required to prove that RAKESH SHARMA and KULWANT KANG personally committed a wrongful act or that they knew all the details of the agreement or the identities of all the other participants.

Exhibit 5 to Plaintiff's Motion for Summary Judgment, docket no. 42.

The jury found Defendant liable for damages for fraudulent conveyance under Cal. Civ. Code § 3439.04. The jury also found that

Plaintiff had established by clear and convincing evidence that Defendant had acted with malice, oppression, or fraud in connection with the fraudulent conveyance. The jury awarded Plaintiff damages of $325,323 (for which all state court defendants are jointly and severally liable); and punitive damages against Defendant of $25,000. Punitive damages in varying amounts were also awarded against the other defendants in the state court lawsuit.

Defendant filed the underlying chapter 7 case on May 16, 2011. The case was discharged on August 16, 2011 and closed. Plaintiff timely filed this adversary proceeding on August 15, 2011. At that time, the state court judgment was on appeal with the California Court of Appeals, Third Appellate District. On July 29, 2014, the appellate court affirmed the judgment, and then denied the state court defendants' petition for review on October 29, 2014.

The adversary complaint seeks a determination of nondischargeability of the state court judgment under § 523(a)(2)(A) and (a)(6).

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment shall be rendered by the Court if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56, incorporated in bankruptcy via Fed. R. Bank. P. Rule 7056; Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 584-85 (1985). All inferences must be drawn against the moving party. Adickes v. S.H. Kress & Co., 398

U.S. 144, 158-59 (1970); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587.

## III. ANALYSIS

### A. Issue Preclusion

Plaintiff contends that the state court judgment satisfies the requirements for issue preclusion under California law and supports a finding of nondischargeability under both § 523(a)(2)(A) and (a)(6). Defendant does not dispute that Defendant was found liable for fraudulent conveyance or that the jury found that Defendant had acted with malice, oppression, or fraud. Defendant argues that issue preclusion should not be applied here because the evidence presented at trial did not support these findings. However, this Court has no authority to review, overturn, or disregard a judgment of the state court. Rather, this Court must give full faith and credit to the state court judgment and apply that state's law of issue preclusion. 28 USC § 1738; <u>See</u> <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985); <u>In re Nourbakhsh</u>, 67 F.3d 798, 800 (9th Cir. 1995).

Under California law, issue preclusion applies only if all of the following elements have been satisfied: (1) the issue sought to be precluded must be identical to that decided in the former proceeding; (2) the issue must have been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding

must be final and on the merits; (5) the party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding. In re Khaligh, 338 B.R. 817, 824 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007). The Court must also consider a sixth element: whether "imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." Id. at 824-25.

Here, there is no dispute that the decision in the former proceeding is final and on the merits, and that the party against whom preclusion is sought – Defendant – is the same as the party to the former proceeding. Defendant argues that the issues are not identical and thus were not actually litigated or necessarily decided.

As noted, the jury found that Defendant was liable for fraudulent transfer under Cal. Civ. Code § 3439.04 under a conspiracy theory. Plaintiff points out that the jury was given an instruction as to an actual fraudulent conveyance and not as to constructive fraudulent conveyance. That instruction was given only as it pertained to Satnam and Dinesh and provided that in order to find Satnam and Dinesh liable for fraudulent conveyance, the jury must find that Plaintiff proved (1) that Plaintiff had a right to payment from Satnam and Dinesh for the cost to construct the homes; (2) that Satnam and Dinesh transferred property to Rakesh and Kulwant; (3) that Satnam and Dinesh transferred the property with the intent to hinder, delay, or defraud one or more of their creditors; (4) that Plaintiff was harmed; and (5) that Satnam and Dinesh's conduct was a substantial factor in causing Plaintiff's harm. The instructions also provided that, to prove intent to

hinder, delay, or defraud creditors, it is not necessary to show that Satnam and Dinesh had a desire to harm their creditors, but only that Satnam and Dinesh intended to remove or conceal assets to make it more difficult for their creditors to collect payment.

The instructions pertaining to conspiracy, as to Defendant and Kulwant, provide that the jury does not need to find that Plaintiff proved that Defendant and Kulwant "personally committed a wrongful act or that they knew all the details of the agreement or the identities of all the other participants." However, as noted, the jury did find that Defendant and others acted with malice, oppression, or fraud in connection with the fraudulent conveyance.

**B. Application of Issue Preclusion to the Jury's Findings**

   **1. Section 523(a)(6)**

Section 523(a)(6) provides for an exception to discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" In determining whether a particular debt is for "willful and malicious injury by the debtor to another" under § 523(a)(6), the Court must apply a two-pronged test: the Court must find that the debtor's conduct in causing the injuries was <u>both</u> willful and malicious. Suarez, 400 B.R. 732, 736 (9th Cir. BAP 2009) (citing In re Su, 290 F.3d 1140, 1146-47 (9th Cir. 2002) and In re Barboza, 545 F.3d 702, 711 (9th Cir. 2008)).

> Willfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself. The debtor must act with a subjective motive to inflict injury, or with a belief that injury is substantially certain to result from the conduct.

> For conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse.

Suarez, 400 B.R. at 736-37 (citations omitted).

Regarding the first prong, willfulness, based on the jury instructions, the jury needed to find that Defendant actually committed an intentional wrongful act. The jury was instructed that a conspiracy is an agreement by two or more persons to commit a wrongful act. Under California law,

> [t]he elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994) (citations omitted). Conspiracy is not an independent cause of action, "but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the tortfeasors a common plan or design in its perpetration." Id. at 510-11.

As noted above, the jury instructions provided that in order to find Defendant liable for conspiracy to commit a fraudulent conveyance, the jury must find that Defendant was aware that Satnam and Dinesh planned to commit a fraudulent conveyance, that Defendant agreed with Satnam and Dinesh and intended that the fraudulent conveyance be committed. The jury instructions also provided that "[m]ere knowledge of a wrongful act without

cooperation or an agreement to cooperate is insufficient to make [Defendant] responsible for the harm."

Vicarious liability will not usually be a basis for a nondischargeable judgment unless the debtor directly participated in the wrongful conduct. See In re Tobin, 258 B.R. 199, 204-06 (9th Cir. BAP 2001). This Court has not found, and the parties have not cited, any case law addressing whether a finding of conspiracy to commit a fraudulent conveyance is sufficient to support a finding of nondischargeability under § 523(a)(6). Here, the jury specifically found that Defendant intended that the fraudulent conveyance be committed, and cooperated or agreed to cooperate in the fraudulent conveyance. To reach this finding, the jury necessarily had to find that the cooperation was Defendant's purchase of the real property from Satnam and Dinesh with knowledge that Satnam and Dinesh were attempting to remove the real property from Plaintiff's reach. The jury necessarily had to find that Defendant directly participated in the scheme to hinder, delay, or defraud Plaintiff by purchasing the real property, which was the intentional wrongful act that gave rise to Defendant's liability. This conclusion is bolstered by the fact that the jury awarded punitive damages against Defendant.

The jury findings also support the second prong of the test under § 523(a)(6), maliciousness. The jury's finding that Defendant participated in the scheme supports the conclusion that Defendant committed a wrongful act, done intentionally, which necessarily caused injury, and was done without just cause or excuse. Further, the jury found that Defendant acted with malice, oppression, or fraud. Either malice or oppression satisfies the malicious prong of

§ 523(a)(6). See In re Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001). Although the jury verdict did not specify whether it based its award of punitive damages on malice, oppression, or fraud, there is no requirement for an explicit finding that conduct is malicious, so long as the individual elements of the "malicious" test are met, which is the case here.

Defendant argues that the issue of conspiracy was not "actually litigated" in the state court. However, excerpts of the record provided with Plaintiff's motion for summary judgment reveal that Rakesh Sharma testified at length about the circumstances surrounding his purchase and subsequent sale of the real property. The other state court defendants also testified about that issue. Thus, the Court finds that the issue of conspiracy was actually litigated.

In sum, the record as a whole demonstrates that Defendant's conduct satisfied both the "willful" and "malicious" prongs under § 523(a)(6). Accordingly, Plaintiff is entitled to summary judgment on this claim.

**2. Section 523(a)(2)(A)**

Section 523(a(2)(A) excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"

To prevail on a claim under this section, a plaintiff must establish the following elements by a preponderance of the evidence:

> (1) The debtor made representations;
>
> (2) The debtor knew the representations had been false at the time he or she made them;
>
> (3) The debtor made these representations with the intent and purpose of deceiving the creditor;
>
> (4) The creditor relied on such representations; and
>
> (5) The creditor sustained the alleged loss and damage as a proximate result of these representations.

In re Lee, 335 B.R. 130, 136 (9th Cir. BAP 2005)

These elements mirror the elements of common law fraud and actual fraud under California law. Id. (citing In re Younie, 211 B.R. 367, 373-74 (9th Cir. BAP 1997), aff'd, 163 F.3d 609 (9th Cir. 1998)).

Here, there is no finding that Defendant made any representation, false or otherwise, to Plaintiff. Accordingly, there is no basis for this Court to conclude that the issue of fraud was actually litigated or necessarily decided with respect to Defendant. Although the jury found that Defendant acted with malice, oppression, or fraud, the finding is in the alternative; thus there is no basis for this Court to conclude that the punitive damages award was necessarily based on fraud. Accordingly, Plaintiff's motion for summary judgment is denied as to this claim.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied with respect to § 523(a)(6). Plaintiff's motion is denied and Defendant's motion is granted with respect to § 523(a)(2)(A). Counsel for the respective parties shall submit proposed forms of orders.

**\*\*\* END OF MEMORANDUM DECISION \*\*\***

**Court Service List**